```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/7/11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

AARON HIGGINS,                                    :
                                                  :
                              Plaintiff,          :            10 Civ. 8217 (PAE)
                                                  :
                   -v-                            :            OPINION & ORDER
                                                  :
NYP HOLDINGS, INC.,                               :
                                                  :
                              Defendant.          :
                                                  :
------------------------------------------------------------------X

**PAUL A. ENGELMAYER, District Judge:**

         Plaintiff Aaron Higgins ("Higgins") moves for leave to amend his complaint against

defendant NYP Holdings, Inc. ("NYP"). Defendant NYP cross-moves for sanctions pursuant to

28 U.S.C. § 1927. For the following reasons, plaintiff's motion for leave to amend is granted in

part and denied in part, and defendant's cross motion for sanctions is denied.

## I.      Background[1]

         Plaintiff Higgins is a former employee of defendant NYP, where he served as a finance

order entry clerk for over four years. On November 12, 2008, NYP terminated Higgins's

employment. On March 11, 2009, Higgins filed an administrative complaint against NYP with

the New York State Division of Human Rights ("SDHR"), alleging racial discrimination and

retaliation. That complaint was simultaneously filed with the Equal Employment Opportunity

Commission ("EEOC"). On March 26, 2009, NYP filed a response to plaintiff's complaint.

After a period of investigation, the SDHR found that there was no probable cause to believe that

---

[1] The description of the underlying facts of this case is drawn from the parties' submissions on
the instant motion, as well as the pleadings in this case. Except where specifically referenced, no
further citation to these documents will be made.

NYP had engaged in unlawful discriminatory activity.  Higgins did not appeal that determination.  On July 22, 2010, the EEOC adopted the findings of the SDHR and issued plaintiff a "right to sue" letter.

On October 20, 2010, plaintiff, appearing *pro se*, filed a complaint against NYP in this Court.  In that complaint, plaintiff claimed race and sex discrimination, and attendant retaliation, in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), the New York State Human Rights Law (New York State Executive Law § 296 *et seq.*) ("NYSHRL"), and the New York City Human Rights Law (New York City Administrative Code § 8-107 *et seq.*) ("NYCHRL").  On February 22, 2011, NYP answered the complaint.  On March 28, 2011, Higgins retained counsel to prosecute his case.  In late April, plaintiff's counsel began contacting the defendant and defense counsel regarding a putative amended complaint, and on May 6, 2011, filed a notice of appearance in this case.

Thereafter, plaintiff submitted a letter to the Honorable William H. Pauley III, United States District Judge, to whom this case was then assigned, requesting a pre-motion conference in relation to this contemplated motion to amend the complaint.  On July 29, 2011, that conference—which included an extensive discussion of the proposed amended complaint ("PAC")—was held.  By Order dated August 3, 2011, Judge Pauley set a briefing schedule for the instant motion.  Judge Pauley also noted that, "[h]aving discussed Plaintiff's proposed amendments at length at the July 29 conference, Plaintiff is cautioned that in the event the proposed Amended Complaint asserts frivolous claims, this Court will entertain a motion for sanctions."  On September 23, 2011, Higgins filed this motion to amend.

The PAC now before the Court for consideration alleges nine causes of action, asserting violations of nearly every employment-related statute applicable in this District.  Counts I

through IV allege violations of 42 U.S.C. § 1981, Title VII, the NYSHRL, and NYCHRL, respectively. They set forth a variety of theories of recovery, including hostile work environment, disparate treatment, failure to promote, failure to investigate allegations of discrimination, reliance on a biased and ineffective investigation of those allegations, improper discharge, and impermissible post-employment discrimination. Each theory posits that Higgins was unfavorably treated because of his race (African-American) and/or religion (Muslim).

In Counts V through VII, plaintiff asserts separate violations of the Family and Medical Leave Act (29 U.S.C. § 2601, *et seq.*) ("FMLA"). Those claims attack NYP's alleged interference with plaintiff's right to take FMLA-protected leave, failure to maintain adequate postings advising employees of their FMLA rights, and retaliation against plaintiff for utilizing FMLA-protected leave.

Finally, in Counts VIII and IX, Higgins claims that NYP is liable under the NYSHRL and NYCHRL for failing to accommodate an anxiety disorder which, plaintiff alleges, was caused by NYP's discriminatory treatment of him and exacerbated by its refusal to allow Higgins to take protected leave in order to recover.

## II.     Discussion: Motion to Amend

### A.     Applicable Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." However, "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007). A proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim on which relief could be granted. *Dougherty v. North Hempstead Bd. of Zoning Appeals*,

[3]

282 F.3d 83, 88 (2d Cir. 2002); *see also Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 421 F. App'x 97, 101 (2d Cir. 2011) (summary order).

Thus, the issue of whether an amendment would be futile is governed by the same standard applied to the adequacy of an already-filed pleading. *Dougherty*, 282 F.3d at 88; *Rodriguez v. New York City Police Dep't*, No. 10-cv-891, 2011 U.S. Dist. LEXIS 122871, at *7– 8 (S.D.N.Y. Oct. 24, 2011). Under that standard, the proposed amended complaint must contain factual allegations amounting to "more than an unadorned, the-defendant-unlawfully-harmed me accusation," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), such that those allegations, if accepted as true, "state a claim for relief that is *plausible on its face*." *South Cherry Street LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (emphasis in original).

"The *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards." *See Jackson v. N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *Gillman v. Inner City Broad. Corp.*, No. 08-cv-8909, 2009 U.S. Dist. LEXIS 85479, at *11–12 (S.D.N.Y. Sept. 18, 2009)). That is because the decisions in *Twombly* and *Iqbal* "expounded the pleading standard for *all* civil actions and it applies to antitrust and discrimination suits alike." *Iqbal*, 129 S. Ct. at 1953 (emphasis added); *see also Laurent v. G & G Bus Serv.*, No. 10-cv-4055, 2011 U.S. Dist. LEXIS 77138, at *10 (S.D.N.Y. May 17, 2011). As a result, while employment discrimination complaints need not contain specific facts establishing a *prima facie* case of discrimination, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514–15 (2002), they must present at least "a short and plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512 (quotation marks and citations omitted). That statement must also allege sufficient facts to make the claim for discrimination "facially plausible." *Samuels v. William*

[4]

*Morris Agency*, No. 10-cv-7805, 2011 U.S. Dist. LEXIS 79293, at *5 (S.D.N.Y. July 19, 2011)

(citing *Iqbal*, 129 S. Ct. at 1953).

Defendants argue that an amendment to add various of Higgins's proposed new claims

would be futile.  The Court considers each category of claims in turn.

**B.      Futility**

1.  Plaintiff's NYSHRL and NYCHRL Claims

NYP argues that Higgins's proposed NYSHRL and NYCHRL claims are barred by the

"election of remedies" provisions in those statutes.  These provide that a person who files a

complaint with either the SDHR or the New York City Commission on Human Rights (the

"Commission") thereby waives his or her right to sue in court.

The applicable provision of the NYSHRL reads as follows:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall
> have a cause of action in any court of appropriate jurisdiction . . . unless such
> person had filed a complaint hereunder or with any local commission on human
> rights . . . provided that, where the division has dismissed such complaint on the
> grounds of administrative convenience, on the grounds of untimeliness, or on the
> grounds that the election of remedies is annulled, such person shall maintain all
> rights to bring suit as if no complaint had been filed with the division.

NYS Executive Law § 297(9).  The pertinent part of the NYCHRL similarly provides:

> Except as otherwise provided by law, any person claiming to be aggrieved by an
> unlawful discriminatory practice as defined in chapter one of this title or by an act
> of discriminatory harassment or violence as set forth in chapter six of this title
> shall have a cause of action in any court of competent jurisdiction . . . unless such
> person has filed a complaint with the city commission on human rights or with the
> state division of human rights with respect to such alleged unlawful
> discriminatory practice or act of discriminatory harassment or violence.

NYC Administrative Code § 8-502(a).

Thus, both the NYSHRL and the NYCHRL require dismissal of a suit in court if the

complainant lodges a complaint with *either* the SDHR or the Commission.  This bar applies in

[5]

federal as well as state court. *See York v. Ass'n of the Bar of City of N.Y.*, 286 F.3d 122, 127 (2d

Cir. 2002); *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n.3 (2d Cir. 2010) ("[A]

state law depriving its courts of jurisdiction over a state law claim also operates to divest a

federal court of jurisdiction to decide the claim.") (internal citation and quotation marks

omitted). The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it

must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6). *Moodie v. Federal*

*Reserve Bank*, 58 F.3d 879, 882 (2d Cir. 1995); *see also Skalafuris v. City of New York*, No. 10-

4603-cv, 2011 U.S. App. LEXIS 22451, at *2 (2d Cir. Nov. 4, 2011) (summary order).

a.   Direct bar

Here, the election of remedies bar requires dismissal of all of Higgins's claims brought

under the NYSHRL that were based on the protected classification of race or color. These

include claims alleging discriminatory termination, hostile work environment, failure to

investigate discrimination, disparate treatment, negative performance reviews, and failure to

train. The bar is "direct" as to these claims because (1) Higgins's complaint to the SDHR

expressly included these claims, (2) the SDHR concluded after an investigation that there was

"no probable cause" to believe such prohibited conduct occurred, and (3) "[w]hen the [SDHR]

has issued a finding of no probable cause . . . plaintiff's claims . . . are barred by the law['s]

election of remedies provisions because [plaintiff] has already litigated the claims before the

[SDHR]." *Guardino v. Vill. of Scarsdale Police Dep't*, No. 09-cv-8599, 2011 U.S. Dist. LEXIS

100200, at *6 (S.D.N.Y. Sept. 6, 2011) (citing *Illie-Stout v. Barrier Free Living*, No. 08-cv-6388,

2009 U.S. Dist. LEXIS 1986, at *3–4 (S.D.N.Y. Jan. 12, 2009) (Lynch, J.)); *see also Henriquez*

*v. Starwood Hotels Resorts Worldwide, Inc.*, 08-cv-7666, 2011 U.S. Dist. LEXIS 111520, at *8–

9 (S.D.N.Y. Sept. 29, 2011). The only NYSHRL claims alleged in PAC Counts I-IV that survive

[6]

the bar are those based on Higgins's Muslim faith, because Higgins did not allege religious discrimination before the SDHR.

  b.  Derivative bar

The election of remedies bar also precludes consideration of any claim—whether brought under the NYSHRL or the NYCHRL—arising out of the same incident on which Higgins's SDHR complaint was based.  That is because the "New York Court of Appeals has interpreted the State Human Rights Law as precluding an action in court that is 'based upon the same incident,' as the Agency complaint." *Borum v. Vill. of Hempstead*, 590 F. Supp. 2d 376, 383 (E.D.N.Y. 2008) (quoting *Emil v. Dewey*, 49 N.Y. 2d 968, 969 (1980)).[2]  Higgins disputes that his putative NYCHRL claims are subject to such preclusion, for two reasons.  First, he notes that following enactment of the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005), courts in this circuit have stated that "all provisions of the [NYCHRL] require independent construction to accomplish the law's uniquely broad purposes." *See, e.g., Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 682 (S.D.N.Y. 2010) (citing *Loeffler v. Staten Island*

---

[2]  *See also Coppedge v. New York City Sales Inc.*, No. 10-cv-6349, 2011 U.S. Dist. LEXIS 104231, at *7 (S.D.N.Y. Sept. 8, 2011) (Jones, J.); *Lavien Sales v. N.Y.C. Transit Authority/Manhattan*, No. 08-cv-3420, 2011 U.S. Dist. LEXIS 99048, at *20 n.11 (S.D.N.Y. Aug. 26, 2011) (Preska, C.J.); *Musaji v. Banco Do Brasil*, No. 10-cv-8541, 2011 U.S. Dist. LEXIS 68161, at *14 (S.D.N.Y. June 24, 2011) (Holwell, J.); *Wiercinski v. Mangia 57, Inc.*, No. 09-cv-4413, 2010 U.S. Dist. LEXIS 66498, at *7 (E.D.N.Y. July 2, 2010) (Glasser, J.); *Marine Midland Bank v. New York State Div. of Human Rights*, 75 N.Y. 2d 240, 245 (1989) ("once a complainant elects the administrative forum by filing a complaint with the Division of Human Rights, a subsequent judicial action on the same complaint is generally barred"); *Benjamin v N.Y.C. Dep't of Health*, 851 N.Y.S.2d 68 (Table), 2007 N.Y. Misc. LEXIS 7367, at *5 (Sup. Ct. N.Y. County Oct. 23, 2007), *aff'd*, 57 A.D.3d 403 (1st Dep't 2008) ("If substantially the same facts are involved, then the doctrine of election of remedies will bar any subsequent court proceedings. The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies.")

*Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)).  Second, he argues that the NYCHRL's election

of remedies provision textually exempts his claims.  These arguments are unpersuasive.

First, the recent decisions on which Higgins relies address an issue not present here.

They note various substantive differences between the NYSHRL and NYCHRL as to the

standards of liability.  These decisions do not disturb the settled case law holding that a

claimant's SDHR complaint addressing the same incident, and that results in a finding of no

probable cause, procedurally bars the claimant from relief under the NYCHRL.  *See, e.g.*, *Vargas*

*v. Morgan Stanley*, No. 10-4043-cv, 2011 U.S. App. LEXIS 18740 (2d Cir. Sept. 9, 2011)

(summary order); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88 (2d Cir. 2011)

(summary order); *Blanc v. Sagem Morpo, Inc.*, 394 F. App'x 808 (2d Cir. 2010) (summary

order); *Loeffler*, 582 F.3d at 278–79; *Fowler*, 677 F. Supp. 2d. at 681–83; *Williams v. New York*

*City Hous. Auth.*, 61 A.D.3d 62 (1st Dep't 2009).

Second, Higgins misreads the NYCHRL's election of remedies clause.  He argues that §

8-502(a) of the NYCHRL bars from litigation only those NYCHRL claims explicitly filed in an

administrative complaint, and identified by specific subsection.  To this end, he points to the

language in § 8-502(a) stating that the bar extends to actions by "those aggrieved by an unlawful

discriminatory practice as defined in Chapter 1 of this title."  Higgins thus asks the Court to hold

that unless a party *explicitly* cites to a specific provision of Chapter 1 of the NYCHRL in his or

her administrative complaint to the Commission or SDHR, there is no bar on a subsequent

lawsuit under that provision.

The Court rejects this formalistic, hypertechnical interpretation.  Section 8-502(a)

imposes a litigation bar where the complainant "has filed a complaint . . . with respect to such

alleged unlawful discriminatory practice or act of discriminatory harassment or violence."  This

language, properly read, imposes a bar that is coextensive with the substance of the claim—*i.e.*, litigation claims directed at the same "act of harassment of violence" are preempted. Further, in practice, Higgins's construction would render the bar a dead letter, by enabling litigants who were canny enough to bring administrative complaints that omitted to reference by name particular provisions of the NYCHRL to preserve their ability to make substantively identical claims under the NYCHRL in court. Yet preventing just such duplicative administrative and litigation claims is the very purpose of an election of remedies provision.

The Court therefore concludes that Higgins's NYCHRL claims are barred under § 8-502(a) if they are based on the same operative events he presented to the SDHR. *See Jackson*, 709 F. Supp. 2d at 224–25 (citing *York*, 286 F.3d at 127); *Coppedge*, 2011 U.S. Dist. LEXIS 104231, at *7 (where NYCHRL claims in "the [subsequent] Complaint contain[] some additional and modified facts, [but] the allegations are identical and emerge from the exact same operative events" as the claims previously presented to the SDHR, such claims are barred). Here, because all of Higgins's NYSHRL and NYCHRL claims "emerge from the exact same operative events" brought before the SDHR, they are barred. *Id.*

Importantly, this derivative bar serves to preclude not only Higgins's race-based claims, but also his claims based on his Muslim faith (brought in PAC Counts I through IV) and based on NYP's purported failure to accommodate plaintiff's anxiety disorder (PAC Counts VIII and IX). That is because Higgins presented these same operative events to the SDHR, which did not find probable cause. Specifically, in a letter to the SDHR dated December 23, 2009, Higgins claimed that one of his superiors had inquired as to when he was going to cut his hair and goatee (which, according to Higgins's letter, "has religious significance") and also inquired whether Higgins was a Muslim. *See* Cmplt. 5–13, Dkt. No. 1. Those events are precisely the events on

which Higgins's PAC would base his claim of religious discrimination. *See* PAC ¶¶ 27, 97, 101, 109. Indeed, the PAC effectively admits as much, by citing to his SDHR complaint in detailing these alleged instances of religious discrimination and/or harassment. *See* PAC ¶ 27.

Similarly, the PAC's claims under the NYSHRL and NYCHRL based on the NYP's purported failure to accommodate his anxiety disorder rest on facts that Higgins presented to the SDHR in his original complaint to that agency. In his December 23, 2009 letter, Higgins states that after "over a year of facing a wall and supplying the NY Post with doctor's notes . . . regarding my absences, the NY Post took not one single step of action to contact my doctors regarding my illness/absences." Cmplt. 7, Dkt. No. 1. He appended to that letter copies of various doctors' notes and prescriptions diagnosing Higgins with, *inter alia*, anxiety and chest pains. *Id.* at 17–19. Those doctors' notes are the very same ones that Higgins now appends to the PAC as incorporated, in support of his claims that NYP failed to accommodate his disability. *See* PAC Ex. F. The facts underlying the PAC as to Higgins's disability claims are thus identical to those which he previously pursued, unsuccessfully, administratively.

The Court thus holds that the election of remedies provisions of the NYSHRL and NYCHRL bar all of the claims Higgins proposes to bring in the PAC under those statutes. The Court therefore would lack jurisdiction to hear them, and an amendment adding them to this action would be futile.[3]

2. Plaintiff's Claims of Religious Discrimination Under Title VII

---

[3] In a final attempt to avoid this result, Higgins claims that his complaint to the SDHR was dismissed solely for administrative convenience. That argument has no record support. The SDHR expressly concluded that there was "No Probable Cause" to support Higgins's claims, and the matter was never appealed or reopened. Higgins has not pointed to any evidence that supports his claim that the SDHR dismissed his complaint for administrative convenience.

Higgins also seeks to add claims under Title VII, alleging that NYP unlawfully discriminated against him based on his Muslim faith. The Court agrees with NYP that these claims fall short of the required pleading standards, and hence that this amendment would be futile.

As noted, the plausibility standard of *Twombly* and *Iqbal* governs Higgins's proposed pleading here. *See Laurent*, 2011 U.S. Dist. LEXIS 77138, at *10. Thus, while an employment discrimination complaint need not contain specific facts establishing a *prima facie* case of discrimination, it must present at least "a short and plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Swierkiewicz*, 534 U.S. at 512, and, following *Twombly* and *Iqbal*, must allege sufficient facts to make the claim of discrimination "facially plausible." *Samuels*, 2011 U.S. Dist. LEXIS 79293, at *5 (citing *Iqbal*, 129 S. Ct. at 1953).

Here, Higgins bases his claim of religious discrimination on the allegations (1) that he was allegedly asked, by his superior Ken Kiczales, if he was Muslim; and (2) that one or more of his co-workers, including Kiczales, allegedly inquired about the length of his hair and goatee which, Higgins alleges, has religious significance to him. Higgins does not, however, allege that he responded to any of these inquiries, or, for that matter, that NYP or its employees knew of Higgins's religious beliefs. Indeed, the PAC fails to allege that anybody at NYP, much less a decision-maker, was *actually* aware that Higgins is, in fact, a practicing Muslim. Nor does the PAC allege, beyond the single unanswered question put to Higgins, that any NYP employee even perceived that he was a Muslim, let alone that they discriminated against Higgins on that basis. As to the question put to Higgins, without more, it does not give rise to an inference of discrimination; "[n]othing in the [alleged] remarks conveys anything but curiosity" about a co-

worker, and such quotidian workplace interactions are not tantamount to discrimination. *Joseph v. Marco Polo Network, Inc.*, No. 09-cv-1597, 2010 U.S. Dist. LEXIS 119713, at *33 (S.D.N.Y. Nov. 10, 2010). Nor is there any other factual allegation of animus against Muslims by anyone at NYP. The bare pleadings in the PAC thus do not make out a plausible claim of religious discrimination.

Furthermore, even if the PAC had satisfactorily pled knowledge by NYP of Higgins's religious faith or that employees there harbored religious animosity towards Muslims, the PAC fails to allege any nexus to an adverse employment action or to Higgins's termination. The PAC fails to allege any connection between the inquiry as to Higgins's religious affiliation or about his hair to any such adverse actions. As alleged, any connection is entirely speculative. Further, while Higgins has appended to the PAC (and the earlier complaints) a number of performance reviews and warning letters regarding his workplace conduct, he does not explain, beyond a conclusory assertion, why these reviews and warnings in fact arose from religious animus. In sum, the PAC's threadbare assertion that his termination is traceable to discrimination is not sufficient to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. As such, the PAC's proposed Title VII claims alleging improper religious discrimination would fail to state a claim, and an amendment to add them would therefore be futile.

### 3. Plaintiff's FMLA Claims

Higgins also seeks to amend his complaint to add three claims under the FMLA, to wit, that: (1) NYP interfered with his protected leave; (2) he was retaliated against for using protected leave; and (3) NYP failed to properly display posters and notifications of employees' rights under the FMLA. The PAC is unclear whether the alleged FMLA violations Higgins claims

[12]

arise out of leave sought to tend to Higgins's own medical problems (29 U.S.C. § 2612(a)(1)(C))

or those of his daughter (29 U.S.C. § 2612(a)(1)(D)).  In the interest of completeness, the Court

analyzes the FMLA claims under both scenarios.

     a.  Statute of limitations

     To be timely, suits under the FMLA must be filed within two years of the last occurrence

constituting an alleged violation of the act, unless the violation was "willful," in which case the

limitations period is extended to three years.  *See* 29 U.S.C. § 2617(c)(1)–(2).  The vast majority

of the conduct on which the PAC's FMLA claims are based occurred on or before July 1, 2008

(*see* PAC ¶¶ 45–54, 59–66); however, Higgins's second claim, for retaliation for his use of

FMLA-protected leave, is based on conduct that includes his termination, which occurred on

November 12, 2008.  *See* PAC ¶¶ 61–62, 142–147.  The earliest date on which Higgins arguably

made any FMLA claim in this case is July 7, 2011—and that date is generous.  That day, Higgins

submitted by letter, but did not file, the PAC, which included, for the first time, FMLA claims.

The statute of limitations did not definitively stop running until September 23, 2011, when the

instant motion was filed.  *See Scelfo v. Aurora Concept, Inc.*, No. 02-cv-7835, 2006 U.S. Dist.

LEXIS 5473, at *54–55 (S.D.N.Y. Feb. 9, 2006).

     As a result, Higgins's first and third FMLA claims, which accrued no later than July 1,

2008, are untimely unless they both (1) were willful (triggering the three-year limitations

period); and (2) "relate back" to the October 20, 2010 filing of the initial complaint in this case.

By contrast, his second claim, for retaliation, as alleged, appears to have accrued until November

12, 2008.  It is thus timely if *either* (1) it is for "willful" misconduct, or (2) it relates back to the

October 20, 2010 complaint.

     i.  "Willfullness" of FMLA claims

At the motion to dismiss stage, a plaintiff must make only a general allegation of willfulness to gain the benefit of the three-year statute of limitations under the FMLA. *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 463–64 (S.D.N.Y. 2011) (citing *Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist.*, No. 07-cv-235, 2009 U.S. Dist. LEXIS 111766 (N.D.N.Y. Dec. 2, 2009); *Krosmico v. JP Morgan Chase & Co.*, No. 06-cv-1178, 2006 U.S. Dist. LEXIS 77079 (E.D.N.Y. Oct. 19, 2006)); *see also Male v. Tops Mkts., LLC*, 08-cv-6234, 2011 U.S. Dist. LEXIS 63966, at *14–15 (W.D.N.Y. June 13, 2011); *Mahran v. Benderson Dev. Co., LLC*, 10-cv-715A, 2011 U.S. Dist. LEXIS 41599 (W.D.N.Y. April 18, 2011); *Hodge v. United Airlines*, 666 F. Supp. 2d 14 (D.D.C. 2009). Higgins has done so here. *See* PAC ¶ 133.[4] Accordingly, Higgins's second FMLA claim, for retaliation, is timely, and the first and third claims are timely if they relate back to the original complaint.

### ii.   Relation back of the first and third FMLA claims

As relevant here, "an amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c). In making this determination, "the pertinent inquiry . . . is whether the original complaint gave the defendant fair notice of the newly alleged claims." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2d Cir. 2000) (citing *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998)); *see also Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006); *Veal v. United States*, No. 01-cv-8033, 2007 U.S. Dist. LEXIS 80029, at *13 (S.D.N.Y. Oct. 9, 2007).

---

[4] At the summary judgment stage, however, Higgins would need to demonstrate a factual basis on which a trier of fact could find willfulness for the three-year limitation period to apply.

Here, the original complaint supplied fair notice as to the first of Higgins's claims (alleged interference with protected leave), but not the third (alleged improper notification to employees of their FMLA rights).[5] The original complaint is devoid of allegations of substandard notice. Accordingly, that claim does not relate back and thus is barred.

Higgins's first FMLA claim, however, is adverted to in a letter from Higgins to the SDHR which he appended to his original complaint. In that letter, dated December 23, 2009, Higgins—although hardly explicit on this point—at least hinted that NYP was not adequately allowing him sufficient leave to cope with illnesses. He wrote: "[I]n 2007, over a year of facing a wall and supplying the NY Post with doctor's notes . . . regarding my absences, the NY Post took not one single step of action to contact my doctors regarding my illness/absences as a result of facing a wall." *See* December 23, 2009 letter, Cmplt. 7, Dkt. No. 1.) He also added, in language that can be taken to imply that FMLA-protected leave (including that relating to his daughter's hospitalization) was being mischaracterized by NYP as sick leave, to his detriment: "As I finished reading the [warning] letter I was in shock and disbelief, because it was apparent that the New York Post was manipulating the fact that I was ill and taking days off solely due to this; from previously being seated facing a wall for over a year. This was never included in the false job performance letter, nor addressed to my doctors." *Id.* at 9. In the Court's view, although the issue is not free from doubt, the statements suffice to "give defendant fair notice" that a FMLA claim may arise in the course of this litigation. *Fama*, 235 F.3d at 815. Higgins's first claim for interference therefore also relates back and is not time barred.

In sum, Higgins's first and second FMLA claims (for interference and retaliation, respectively) are timely, but the third (for deficient notice) is not.

---

[5] This conclusion applies equally to claims premised on Higgins's own health and that of his daughter, *i.e.* 29 U.S.C. § 2612(a)(1)(C) and 29 U.S.C. § 2612(a)(1)(D).

    b.  Substantive adequacy

        i.  The interference claim

Higgins's interference claim is substantively deficient.  The FMLA entitles covered employees to take up to 12 weeks of leave per year to care for a spouse, parent, or child that has a serious health condition, or for the employee's own serious health condition that makes the employee unable to perform the functions of his or her position. 29 U.S.C. §§ 2612(a)(1)(C), (a)(1)(D), (b).  "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A)–(B).

To make out a *prima facie* case on a claim for interference with FMLA rights under 29 U.S.C. § 2615(a)(1), a plaintiff must establish five elements: "(1) that [he] is an eligible employee under the FMLA; (2) that defendant is an employer as defined in [the] FMLA; (3) that [he] was entitled to leave under [the] FMLA; (4) that [he] gave notice to the defendant of [his] intention to take leave; and (5) that [he] was denied benefits to which she was entitled under [the] FMLA." *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004) (citing *Santos v. Knitgoods Workers' Union, Local 155*, No. 99-cv-1499, 1999 U.S. Dist. LEXIS 9036, at *7 (S.D.N.Y. June 15, 1999), *aff'd*, 252 F.3d 175 (2d Cir. 2001)); *see also Garraway v. Solomon R. Guggenheim Found.*, 415 F. Supp. 2d 377, 382 (S.D.N.Y. 2006).

Here, Higgins has failed to allege his entitlement to protected leave with respect to to his own medical condition.  The PAC fails to allege facts sufficient to establish that Higgins suffered from a "serious health condition" as defined in the statute, to wit, that his condition involved inpatient treatment or continuing care.  At most, the doctor's notes that Higgins submitted with

[16]

his complaints show three distinct clinical diagnoses rendered at least seven months apart and regarding discrete problems, including a viral syndrome, chest pains, and anxiety. The PAC asserts no facts to suggest that these issues were continuing (or related), or that Higgins underwent any continuing course of treatment in response to them. Higgins offers nothing besides conclusory statements to support his claim of entitlement to FMLA leave (*see* PAC ¶¶ 48–53, 122–47), and such statements "are not entitled to weight under *Iqbal* and cannot be the basis of a plausible complaint surviving a motion to dismiss." *Milne v. Navigant Consulting*, No. 08-cv-8964, 2010 U.S. Dist. LEXIS 115650, at *31 (S.D.N.Y. Oct. 27, 2010).

Furthermore, Higgins fails to satisfactorily allege either that he gave NYP notice of an intention to take FMLA leave, or that any such request was denied. Apart from its non-cognizable conclusory allegations (*see* PAC ¶¶ 48–53, 122–47), Higgins's PAC alleges no facts suggesting that he notified NYP of any qualifying medical problem that he had or was denied any leave which he sought. Quite to the contrary, the PAC states that Higgins took leave as a result of the alleged medical issues. PAC ¶¶ 48–53. While Higgins may have elected to report this limited leave time as sick days rather than as designated FMLA leave, this does not assist Higgins, because he fails to allege that he had notified NYP of a serious ongoing medical condition justifying such leave. *See Yanklowski v. Brockport Cent. School Dist.*, No. 10-cv-6601L, 2011 U.S. Dist. LEXIS 66360, at *3–4 (W.D.N.Y. June 22, 2011) (rejecting FMLA interference claim where plaintiff elected to record leave as sick days rather than FMLA leave).

As to Higgins's proposed interference claim with respect to his daughter's hospitalization, that claim is also deficient. The PAC does satisfactorily allege an entitlement to protected leave on his daughter's account. *See* PAC ¶ 61. However, Higgins acknowledges that he *was* granted leave in that instance (PAC ¶ 143) and fails to allege the denial of any request for

[17]

FMLA leave in relation to his daughter's condition.  Accordingly, Higgins's claim of interference by NYP is deficient in all permutations, and an amendment adding it would be futile.

ii.  The retaliation claim

Finally, Higgins's claim of retaliation premised on 29 U.S.C. § 2612(a)(1)(C) for taking protected leave, to the extent based upon his own medical condition, fails because a necessary predicate to such a claim is an entitlement to FMLA leave, which the PAC fails to allege.  *See Milne*, 2010 U.S. Dist. LEXIS 115650, at *37–38 n.19; *Lee v. Heritage Health & Hous., Inc.*, No. 07-cv-10628, 2009 U.S. Dist. LEXIS 91419, at *42 n.14 (S.D.N.Y. Sept. 30, 2009) ("If Plaintiff cannot show that she had a serious health condition, entitling her to FMLA leave, then, *a fortiori*, she cannot show that she was retaliated against for exercising rights that were, in fact, protected by the Act."); *Brown v. Pension Bds., United Church of Christ*, 488 F. Supp. 2d 395, 410 (S.D.N.Y. 2007).

To the extent that Higgins asserts a retaliation claim relating to FMLA leave he was granted due to his daughter's hospitalization (*see* 29 U.S.C. § 2612(a)(1)(D); PAC ¶ 61), that claim may be added.  A claim of retaliation for exercising FMLA rights is analyzed under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Potenza v. City of New York*, 365 F.3d 165, 167–68 (2d Cir. 2004); *Geromanos*, 322 F. Supp. 2d at 433.  To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) he exercised rights protected under the FMLA; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *Potenza*, 365 F.3d at 168; *accord Reilly v. Revlon Inc.*, 620 F. Supp. 2d 524, 537–38 (S.D.N.Y. 2009); *Geromanos*, 322 F. Supp.

[18]

2d at 433–34. The first and second prongs of this test are not in dispute. As to the third, neither party disputes that Higgins was terminated by NYP and that certain performance warnings were a factor in that termination. Finally, as to the fourth prong, Higgins alleges that at least one of these performance warnings (dated July 1, 2008) was made soon after the FMLA-protected leave he took to tend to his daughter, May 16–23, 2008. Higgins alleges, and the documents appended to the PAC reflect, that this review referred negatively to Higgins's "improper attendance" at work. *See* PAC ¶ 61–62; PAC Ex. G 2. In the context of the full warning letter, it appears to the Court most likely that this statement referred to excessive breaks allegedly taken by Higgins, not to FMLA-protected leave. However, the letter is not conclusive on this point, and given the temporal proximity of the warning to Higgins's use of FMLA-protected leave some five to six weeks earlier, the Court determines that Higgins has met his pleading burden as to a plausible inference of retaliatory intent. *See Samuels*, 2011 U.S. Dist. LEXIS 79293, at *5 (citing *Iqbal*, 129 S. Ct. at 1953). This one claim is accordingly not futile. The Court grants Higgins leave to add it.

**III.    Discussion: Sanctions**

Title 28 U.S.C. § 1927 authorizes sanctions "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," and upon "a finding of conduct constituting or akin to bad faith." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (citing *60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.)*, 218 F.3d 109, 115 (2d Cir. 2000) (internal quotation marks omitted)). The Second Circuit also has imposed a procedural requirement of notice and an opportunity to be heard. *Gollomp*, 568 F.3d at 368. This requires that the party facing possible sanctions receive notification of (1) the source of authority for the sanctions being considered;

[19]

and (2) the specific conduct or omission for which the sanctions are being considered. *Id.* With regard to the opportunity to be heard, depending on the circumstances, "a full evidentiary hearing is not required[, and] the opportunity to respond by brief or oral argument may suffice." *Id.*

Here, sanctions are not warranted. Although Higgins's motion for leave to amend was overwhelmingly unsuccessful, his counsel generally articulated colorable arguments in support of the PAC's proposed new claims, such that the Court is not prepared to term these unsuccessful claims frivolous. Higgins's counsel also dropped some claims—including, *inter alia*, under the FLSA, New York Labor Law, and Americans with Disabilities Act—from the PAC as initially presented to Judge Pauley. The Court also notes that plaintiff has not sought to impose liability on or recover damages from parties with immunity, a common feature of behavior held sanctionable. *See, e.g., Gollomp*, 568 F.3d at 372–73.

The Court is, finally, mindful that "[i]f the sanction regime is too severe, lawyers will sometimes be deterred from making legitimate submissions on behalf of clients out of apprehension that their conduct will erroneously be deemed improper." *Gollomp*, 568 F.3d at 373 (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90–91 (2d Cir. 2003)). It is especially important to avoid such overdeterrence in discrimination cases. As the Supreme Court has emphasized, "assessing attorney's fees against Plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII" and other anti-discrimination laws. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). The Court therefore declines to impose sanctions on plaintiff's counsel.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion for leave to amend the Complaint as to all claims except his claim of retaliation for the exercise of FMLA rights, based on the leave he took to tend to his daughter's hospitalization. *See* 29 U.S.C. § 2612(a)(1)(D). Defendant's cross-motion for sanctions is denied. Plaintiff is directed to file an amended Complaint consistent with this opinion by no later than December 14, 2011. The Clerk of Court is directed to terminate the motion at Docket No. 26.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 7, 2011
       New York, New York